## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KEITH HORIST, JOSHUA EYMAN and LORI EYMAN, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 1:17-cv-08113<br>)<br>) |
| v. | ) Honorable Robert W. Gettleman<br>) |
| SUDLER AND COMPANY d/b/a SUDLER PROPERTY MANAGEMENT, HOMEWISE SERVICE CORP., INC., and NEXTLEVEL ASSOCIATION SOLUTIONS, INC., | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**SUDLER AND COMPANY'S**
**BRIEF IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs seek to apply a statute that regulates non-profit condominium associations and their Boards of Managers to for-profit third-party property management companies, in an effort to argue that the standard business of a property management company is illegal under Illinois law. As part of their professional services, property management companies may provide services to associations and unit sellers to obtain and package disclosure documents to aid in the sale of a condominium unit. Here, Plaintiffs, the sellers of condo units, assert that, by providing professional services specifically requested by the Plaintiffs themselves, Defendants somehow broke the law. The clear language of the statute, however, was not intended to regulate the business of a property management company; therefore, Plaintiffs' claims all fail as a matter of law and should be dismissed with prejudice.

## II. PLAINTIFFS' ALLEGATIONS

Plaintiffs assert a putative class action against Sudler and Company ("Sudler"), a private property management company, and Homewise, a company that provides an online system to manage and process documents associated with the sale of properties. (*See* Compl. (Ex. A. to ECF No. 1) at ¶¶ 1, 7.) Plaintiffs, sellers of condominiums, claim Sudler violated the Condominium Property Act, 765 ILCS 605/1 *et seq.* ("the Condo Act") and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* ("ICFA"). The claims are all based on the premise that Defendants violated Illinois law by allegedly charging amounts beyond a "reasonable fee covering the direct out-of-pocket cost" of providing a package of disclosure documents listed in Section 22.1 of the Condo Act (the "Disclosure Documents"). (*Id.* p. 1.) Plaintiffs also assert purported causes of action for inducement to breach fiduciary duty, conspiracy, and unjust enrichment, which also rely on an underlying violation of the Condo Act.

1

Significantly, Plaintiffs' Complaint is based upon a provision of the Condo Act relating to the provision of Disclosure Documents that refers only to a condominium "association" or its "Board of Managers":

> A reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information.

765 ILCS 605/22.1. Plaintiffs, however, have not sued any condominium association or Board of Managers. Section 22.1 makes no reference to a third-party property management business, and does not purport to regulate the business of third-party property management businesses. Despite this, Plaintiffs allege Sudler and Homewise can be sued for charging more than their "direct out-of-pocket cost" of providing Disclosure Documents. (*See* Compl. ¶¶ 6-8.) Plaintiffs claim the third-party for-profit property management company is subject to Section 22.1, because it is an agent of the condo associations. (*Id.* ¶ 8.)

Plaintiffs voluntarily elected to purchase copies of Disclosure Documents from Homewise, and voluntarily paid the amounts invoiced by Homewise without protest. (*See id.* ¶¶ 26-29, 34-37.) Horist paid $155 for a paid assessment letter, $80 for a 22.1 resale certificate, and $5 for a convenience fee. (*Id.* ¶ 26.) The Eymans paid $155 for a paid assessment letter, $205 for a 22.1 resale disclosure package with association documents, and $5 for a convenience fee. (*Id.* ¶ 34.) Plaintiffs do not plead they ever made any request to their respective condo associations or Boards of Managers to obtain the Disclosure Documents before ordering copies from Homewise. (*See id.* ¶¶ 25, 33.) Plaintiffs do not plead they paid Sudler any amount for the documents or that Sudler charged the amounts; rather Plaintiffs paid Homewise directly for all amounts. (*See id.* ¶¶ 29, 37.) Without any factual support, Plaintiffs claim these payments were made under "duress." (*Id.* ¶¶ 29, 37.)

### III. <u>LEGAL STANDARDS</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a complaint should be dismissed if it fails to state a claim upon which relief can be granted. A plaintiff is obligated to provide the grounds of entitlement to relief, "which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When a plaintiff brings a claim under a statute that is inapplicable to the defendant, the claim should be dismissed pursuant to Rule 12(b)(6). *Health Cost Controls v. Skinner*, 44 F.3d 535, 537 (7th Cir. 1995).

### IV. <u>ARGUMENT</u>

#### A. *Plaintiffs Cannot Establish Any Violation of the Condo Act.*

##### 1. <u>Section 22.1 Does Not Apply to Property Management Companies.</u>

The operative language of the Condo Act upon which Plaintiff relies negates Plaintiffs' claims because the statutory language only applies with regard to "the association or its Board of Managers." 765 ILCS 605/22.1. The statute does not mention third-party for-profit companies that provide these documents as a service for a fee. Rather, it only addresses the ability to charge a "reasonable fee covering the direct out-of-pocket cost" of the condo association or the Board of Managers if they obtain the documents for the seller.

The cardinal rule of statutory construction is to "ascertain and give effect to the true intent and meaning of the legislature." *Kunkel v. Walton*, 179 Ill. 2d 519, 533 (1997). The language of the statute itself is the best indication of the legislature's intent, and if the statutory language is clear, its plain language shall apply. *Id.* A court cannot "read into a statute words which are not within the plain meaning of the legislature as determined from the statute itself." *Petalino v. Williams*, 2016 IL App (1st) 151861, ¶ 24 ("Such word is not in the statute and we

cannot place it there"). By its own terms, the statute does not apply to property management companies or third-party vendors

The Condo Act regulates the duties of "boards of managers, as well as condominium associations and unit owners." *Royal Glen Condo. Ass'n*, 2014 IL App (2d) 131311, ¶ 22. Section 22.1 does not reference or attempt to regulate businesses that contract with condo associations or boards of managers to provide services. Nowhere in the Act does it impute the duties of condo associations or boards of managers to outside companies, and such a construction would be contrary to the intent of the act. *See, e.g., id.* at ¶ 24 (holding that portion of condo act regarding the insurance requirements of a condo association could not create a private right of action against an insurance producer).

Section 22.1 is intended to "to prevent prospective purchasers from buying a unit without being fully informed and satisfied with the financial stability of the condominium as well as the management, rules and regulations which affect the unit being purchased." *D'Attomo*, 2015 IL App (2d) 140865 at ¶ 34 (*quoting Nikolopulos v. Balourdos*, 245 Ill. App. 3d 71, 77 (1st Dist. 1993)). The language of the statue itself makes clear that the purpose of Section 22.1 is not to regulate third-party vendors that as part of their business compile the documents listed in Section 22.1. Rather, it allows a prospective purchaser to inspect documents "upon demand." Therefore, Plaintiffs' claims must be dismissed because Sudler owed no duty to Plaintiffs to comply with the statute.

2. A Private Right of Action By a Seller Against a Property Management Company Cannot Be Implied Under Section 22.1.

The Condo Act does not specifically create a cause of action for an alleged violation of Section 22.1, and there is no case that holds that a condo seller can recover against a condo association or Board of Managers of a condo association, much less a third-party vendor of a

4

condo association. In this case, implying a private right of action against a property management company by a seller of a condo would be improper under Illinois law.

Section 22.1 is silent with respect to any remedy for a violation of the statute. *See* 765 ILCS 605/22.1; *D'Attomo*, 2015 IL App (2d) 140865 at ¶ 35. In order for a private right of action to be implied from a silent statute, a court must analyze in the specific suit whether: "(1) the plaintiff is within the class of persons the statute is designed to protect; (2) implying a cause of action is consistent with the underlying purpose of the statute; (3) the plaintiff's injury is one the statute is designed to prevent; and (4) implying a cause of action is necessary to effectuate the purpose of the statute." *D'Attomo*, 2015 IL App (2d) 140865 at ¶ 37; *see also Nikolopulos*, 245 Ill. App. 3d at 77.

The appellate courts have found an implied private right of action **against a <u>seller</u> of a condo** for termination of a contract **by the <u>buyer</u> of the condo** if the <u>seller</u> fails to provide a proper section 22.1 disclosure. *See D'Attomo*, 2015 IL App (2d) 140865 at ¶ 37; *Nikolopulos*, 245 Ill. App. 3d at 77. In those cases, the cause of action was implied under Section 22.1 because disclosure requirements were designed to protect buyers of condos from not receiving information regarding the property at issue. *D'Attomo*, 2015 IL App (2d) 140865 at ¶ 38. In *D'Attomo*, the private right of action under the Act was implied "under the factual scenario present in this case." *Id.* ¶ 39. The statute does not contemplate an action by a seller against a management company of the condominium association for damages. Applying the four-part test confirms no private right of action should be implied.

*First*, the statute is not designed to protect sellers of condos; rather, it is meant to protect buyers of condos. *See D'Attomo*, 2015 IL App (2d) 140865 at ¶ 34. To the extent the language at the end of the statute arguably can be construed to protect a seller, it only protects the seller from

the condo association or Board of Managers, not a third-party property management company. More likely, the language is meant to protect the association or Board of Managers from having to provide the Disclosure Documents without compensation.

*Second*, implying a cause of action would not be consistent with the purpose of the statute. Allowing suits against third-party vendors for their professional services in compiling the required information would lead to less reliable Section 22.1 disclosures. Professionals would refuse to provide these services because it would be illegal for such companies to charge for their services. This would lead to untrained condo associations and Boards of Managers compiling these disclosures, which would be much less reliable and increase the chance that a buyer of a condo would not be properly informed of the relevant disclosures. Indeed, implying a cause of action would frustrate the Condo Act's express grant allowing associations to engage professional property management firms in 765 ILCS 160/18(a)(5).

*Third*, the statute is not designed to protect a seller from paying the exact amount a professional vendor charges to compile these disclosures; rather, the statute is structured to ensure that the prospective purchaser is able to inspect documents and the association is able to collect a reasonable fee if the prospective seller requests the documents from the association.

*Fourth*, implying a cause of action is not necessary to effectuate the purpose of the statute. Implying a cause of action against the property management company actually frustrates the statute by discouraging professional vendors from providing services to reliably compile disclosures and by encouraging the condo association to be an intermediary where it would have the opportunity to charge more than the standard fee of the property management company.

This analysis is supported by *Royal Glen Condominium Association*, 2014 IL App (2d) 13131. There, the appellate court refused to imply a cause of action from a portion of Condo Act

addressing the insurance requirements of a condo association, as the statute was not meant to regulate insurance producers even though it referenced insurance issues in the statute *Id.* at ¶ 22. Like the insurance producer in that case, a property management company is not a proper defendant against which to imply a private right of action under Section 22.1.

3. Plaintiffs Paid No More Than the Cost to the Condo Associations.

Section 22.1 states that "[a] reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged **by the association or its Board of Managers to the unit seller** for providing such information." 765 ILCS 605/22.1 (emphasis added). Thus, the statute refers to the costs of the association or its Board. Nothing in the statute forbids a condo association from engaging a professional vendor to perform the specialized task of compiling the documents listed in the statute. Rather, utilizing a professional to perform this specialized and important task would be the preferable practice rather than leave the task to those on the Board of Managers or condo association that likely does not have the specialized knowledge to properly compile the Section 22.1 disclosures. This practice furthers the intended purpose of Section 22.1 of "fully inform[ing]" the buyer of the financial stability, management, rules, and regulations regarding the condo unit. *See D'Attomo*, 2015 IL App (2d) 140865 at ¶ 34. Here, the condo association's third-party vendor professionally compiled the documents, and Plaintiffs paid the cost of using a professional vendor. Having Plaintiffs pay the third-party vendor directly ensures that the condo seller pays no more than the cost that the condo association or its Board would have had to pay in order to obtain the Disclosure Documents from the vendor on the seller's behalf.

4. Plaintiff's "Agency" Theory Contradicts Illinois Law.

Plaintiffs' Complaint asserts that, even though the Condo Act by its own terms does not

7

apply to third-party vendors such as Sudler and Homewise, they are still both directly liable for a violation of the statute, because they served as the "agents and subagents" of the associations, to which the Condo Act applies. However, an agent cannot be individually liable for a principal's failure to comply with the principal's duty. The argument that an agent taking an "active part" in the violation of the duty subjects the agent to liability has been rejected in recent cases in the Illinois appellate court and the Seventh Circuit. Therefore, Sudler cannot be liable for violation of a duty of the association even if it acted as the association's agent.

Any "active part" agency argument regarding liability of the agent if it "takes an active party in violating some duty the principal owes to a third person" fails as a matter of law. *See Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Capital, LLC*, 699 Fed. Appx. 550, 552 (7th Cir. 2017); *Bovan v. Am. Family Life Ins. Co.*, 386 Ill. App. 3d 933, 942 (1st Dist. 2008). *Bovan* affirmed that an agent cannot be held liable for violation of a duty owed by the principal to the plaintiff, and rejected other cases that suggested otherwise. "It is a general principle of agency law that '[a]n agent's breach of a duty owed to the principal is not an independent basis for the agent's tort liability to a third party. An agent is subject to tort liability to a third party harmed by the agent's conduct only when the agent's conduct breaches a duty that the agent owes to the third party.'" *Id.* (quoting Restatement (Third) of Agency § 7.02, at 138 (2006)).

Moreover, in October, the Seventh Circuit likewise expressly rejected the "active-part" agency argument. In *Avon Capital*, the Seventh Circuit found that a prior Seventh Circuit case, *Merrill Tenant Council v. U.S. Dept. of Hous. & Urban Dev. (HUD)*, 638 F.2d 1086, 1095 (7th Cir. 1981), did not hold "active part" agency liability was available, but instead merely quoted a statement from a treatise that inaccurately portrayed Illinois law. *See also Gateway Erectors v. Lutheran General Hospital*, 102 Ill. App. 3d 300, 303 (1st Dist. 1981) (rejecting "active part"

8

agency theory of liability); *Joe & Dan International Corp. v. United States Fidelity & Guaranty Co.,* 178 Ill. App. 3d 741, (1st Dist. 1988) (same).

Plaintiffs allege no independent duty of Sudler outside of the provisions relating to associations or their Boards of Managers under the Condo Act. Since the subject provision of the Condo Act, by its express terms, does not apply to Sudler, Plaintiff attempts to bootstrap Sudler to the condominium association under an agency theory. As shown by *Bovan* and *Avon Capital*, however, such a legal theory fails as a matter of law.

### 5. Sudler Did Not "Charge" Plaintiffs for Disclosure Documents.

Even if Plaintiffs could properly allege a violation of Section 22.1 by Sudler, Plaintiffs fail to plead Sudler "charged" them an improper amount. The Condo Act states "A reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information." 765 ILCS 605/22.1. Here, Plaintiffs do not plead that Sudler "charged" them for the Disclosure Documents; rather the only "charge" was by Homewise. (Compl. ¶¶ 26, 24.) Thus, Plaintiffs cannot argue that Sudler violated the provision.

### B. *Plaintiffs Cannot Recover for Consumer Fraud.*

Plaintiffs' Complaint shows Plaintiffs voluntarily chose the documents to order from Homewise and voluntarily paid the applicable charges specifically set out on the web site. There is no fraudulent statement alleged, no misrepresentation alleged, and no deceptive act alleged. The conduct alleged by Plaintiffs simply does not fall under the ICFA.

The ICFA applies to business practices of "deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact . . ." 815 ILCS 505/2. To state a claim under the ICFA, a complaint must plead

9

with sufficient particularity to meet the standards of Rule 9(b). *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446-47 (7th Cir. 2011).

The elements of an ICFA claim are "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 190 (2005). If a plaintiff relies on an "unfair practice" rather than a deceptive act, the following factors are considered: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 419 (2002).

       1. <u>Plaintiffs Fail to Plead Any Deceptive Act.</u>

Plaintiffs' vague and conclusory allegations fail to sufficiently plead the elements of an ICFA claim. First, there is no false or deceptive representation alleged at all. The Complaint admits that Homewise advised Plaintiffs of the exact cost of the documents, and that Plaintiffs voluntarily chose to proceed to order and pay for the documents. (*See* Compl. ¶¶ 26-29, 34-37.) Plaintiffs do not allege that Defendants quoted a different price or made any representation regarding the documents. Plaintiffs do not allege any contact with Defendants other than the fact that Plaintiffs placed orders on the Homewise web site. Plaintiffs do not allege that Defendant failed to deliver the documents voluntarily ordered, or that Defendants provided inaccurate documents. The facts of this case do not fit into an ICFA context.

       2. <u>Plaintiffs Fail to Plead Any Unfair Practice.</u>

While it is clear that no deceptive act exists, it appears Plaintiffs attempt to allege an "unfair practice." Nonetheless, Plaintiffs do not plead any facts that could establish that the

charges were in any way unreasonable. Even charging unconscionably high prices is not necessarily unfair within the meaning of the Consumer Fraud Act. *Saunders v. Michigan Ave. Nat. Bank*, 278 Ill. App. 3d 307, 313 (1st Dist. 1996). "Rather, the defendant's conduct must violate public policy, be so oppressive as to leave the consumer with little alternative but to submit, and injure the consumer." *Id.* (finding court properly dismissed complaint even though it alleged an unconscionably high fee but did not allege sufficient facts to show oppressiveness). Even failing to reveal charges before billing a customer is not deceptive and not actionable under the ICFA. *Rockford Mem'l Hosp.*, 368 Ill. App. 3d at 123.

Under the facts pled in the Complaint, it is clear there was not an oppressive charge, especially given that the Plaintiffs never objected to the charges they agreed to when ordering from Homewise's web site, and (as shown above) given that Defendant, a third-party vendor, had no obligation to limit its charges to "out-of-pocket costs." Charging $240 or $365 to compile significant packages of documents ordered by Plaintiffs is not against public policy, it is not "immoral, unethical, oppressive, or unscrupulous," and does not cause substantial injury to consumers. Plaintiffs sought a service, and Defendant reasonably and adequately provided that service at Plaintiffs' request. There is nothing "unfair" here. *See Robinson*, 201 Ill. 2d at 419; *Rockford Mem'l Hosp.*, 368 Ill. App. 3d at 124.

### 3. Plaintiffs Fail to Plead Reliance on the Alleged Deception.

Plaintiffs fail to plead any facts to establish the second element – that Defendants intended that Plaintiffs rely on the alleged deception. Because of this, Plaintiffs' Complaint cannot survive. *See, e.g., Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207, 211 (1st Dist. 1997) (failure to plead sufficient intent of defendant required dismissal of complaint); *Krause v. GE Capital Mortg. Serv., Inc.*, 314 Ill. App. 3d 376, 388 (1st Dist. 2000) (plaintiff could not

11

establish required element of intent when "defendant did not conceal, suppress, or hide any material facts . . . defendant disclosed to plaintiffs the fees at issue before plaintiffs chose the additional services provided and before charging plaintiffs for these services").

        4.   <u>Plaintiffs Fail to Plead Actual Damage and Proximate Cause.</u>

Plaintiffs also fail to plead actual damage that was proximately caused by the alleged deception. Plaintiffs went to Homewise's web site, chose the documents they wanted, and voluntarily paid the standard amounts listed for their orders. If Plaintiffs suffered any injury, it was not caused by Sudler, but rather was the result of Plaintiffs' own voluntary actions. Furthermore, Sudler did not charge or collect the amounts from Plaintiffs. Finally, Plaintiffs fail to plead sufficient facts to show their damages, as they do not plead facts showing what the "reasonable fee" Plaintiffs allege should have been charged. *See Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 61.

        5.   <u>The Voluntary Payment Doctrine Bars the ICFA Claim.</u>

Plaintiffs' Complaint makes it clear that Plaintiffs voluntarily ordered the subject documents and voluntarily paid for those documents. In actions alleging an unfair practice under the ICFA, the voluntary payment doctrine bars claims when a plaintiff voluntary paid for the services. *Jenkins v. Concorde Acceptance Corp.*, 345 Ill. App. 3d 669, 677, (1st Dist. 2003), *aff'd sub nom. King v. First Capital Fin. Services Corp.*, 215 Ill. 2d 1 (2005). Thus, when it is alleged that a charge violated the Consumer Fraud Act because the charge was illegal (such as if it violated a statute) rather than procured by fraud, the voluntary payment defense is applicable. *Id.*

"Under the voluntary payment doctrine, money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because the claim was illegal." *Jenkins*, 345 Ill. App. 3d at 674–

75. Here, Plaintiffs only claim is that Sudler committed an "unfair practice" under the act, because the charge was illegal under the Condo Act. Even if this were the case, the voluntary payment doctrine would bar Plaintiffs' claims.

Plaintiffs' bare allegations of "duress" cannot save their ICFA claim from the voluntary payment doctrine, as the facts alleged in the Complaint do not sufficiently plead that "there was some necessity that amounted to compulsion and the payment was made under the influence of that compulsion." *Harris v. ChartOne*, 362 Ill. App. 3d 878, 883 (5th Dist. 2005) (affirming grant of motion to dismiss of ICFA claim for failure to plead sufficient facts to obviate the voluntary payment doctrine). Where there is no payment under protest for amounts that were pre-disclosed, no allegations of any threat, and the plaintiffs failed to give the defendants any ability to resolve or refuse to resolve the dispute, it cannot be said that a plaintiff was under sufficient "compulsion" to constitute duress. *See Butitta v. First Mortg. Corp.*, 218 Ill. App. 3d 12, 18 (1st Dist. 1991).

### C. *Plaintiffs Fail to Plead with Particularity Facts Sufficient to Establish Inducement or Aiding Breach of Fiduciary Duty.*

Plaintiffs fail to plead any facts establishing the elements of a breach of fiduciary duty committed by their associations or Boards of Managers. Therefore, there cannot be any underlying breach of fiduciary duty, which negates the claims of inducement or aiding breach of fiduciary duty. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 508 (7th Cir. 2007) (underlying breach of fiduciary duty is necessary element for inducement claim) *Timothy & Thomas LLC v. Viral Genetics, Inc.*, 06 C 1813, 2010 WL 3155972, at *22 (N.D. Ill. Aug. 10, 2010) (without an underlying breach of fiduciary duty, there can be no recovery for "aiding and abetting").

Furthermore, claims for inducement or aiding breach of fiduciary duty are subject to the

particularity requirements of Rule 9(b) when based on claims sounding in fraud. *Id.* at 507. As Plaintiffs assert a "scheme" and "conspiracy" among the condo associations, Sudler, and Homewise, Rule 9(b) applies. Here, Plaintiffs fail to allege any active misbehavior of Sudler or any particular acts of Sudler. Plaintiffs plead no facts to support their bare-bones allegations that Sudler "assisted the associations in breach of their fiduciary duties by controlling, working with, encouraging, directing, and/or requiring association members to use Defendant Homewise . . . ." Plaintiffs' Complaint fails to provide any facts that explain "the who, what, when, where, and how" necessary to plead their claim. *See Borsellino*, 477 F.3d at 507. Even under standard pleading rules, Plaintiffs' allegations fail to plead sufficient facts rising above a speculative level.

        ***D.***      ***The Civil Conspiracy Count Fails Due to Lack of Sufficiency and Lack of a Viable Underlying Claim.***

The elements of civil conspiracy under Illinois law are: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or lawful purpose by unlawful means; and (2) a tortious act by one of the co-conspirators in furtherance of the agreement that caused injury to the plaintiff. *Borsellino*, 477 F.3d at 509. Where, as here, a complaint does not identify the nature of the purported agreement, when the agreement was made, which individuals arranged the conspiracy, where the conspiracy was formed, and other critical details regarding the alleged conspiracy to commit fraud, it should be dismissed. *Borsellino*, 477 F.3d at 509. Plaintiffs fail to plead facts showing the "who, what, when, where, and how" necessary to plead their claim for conspiracy. *See Borsellino*, 477 F.3d at 507. Furthermore, if Plaintiffs' underlying allegations of violation of the Condo Act and ICFA cannot survive, then their claim for civil conspiracy cannot survive due to the lack of an actionable underlying tort. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 60.

### E. Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law.

*First*, the voluntary payment doctrine bars the unjust enrichment claim. Plaintiffs admit they received the services and documents they voluntarily ordered. Plaintiffs were aware of the charges and chose to proceed, voluntarily paid the amounts, and never objected to the charges before filing this lawsuit. "A person is not entitled to compensation on the grounds of unjust enrichment if he receives from the other that which it was agreed between them the other should give in return." *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 68 Ill. 2d 375, 391 (1977) (*citing* Section 107 of the Restatement of Restitution).

> It has been a universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal. It has been deemed necessary not only to show that the claim asserted was unlawful, but also that the payment was not voluntary; that there was some necessity which amounted to compulsion, and payment was made under the influence of such compulsion.

*King v. First Capital Fin. Services Corp.*, 215 Ill. 2d 1, 27–28 (2005) (internal quotations omitted) (affirming dismissal of restitution count due to voluntary payment doctrine).

*Second*, Plaintiffs claim for unjust enrichment is based on the same facts as those alleged under the counts for violation of the Condo Act and the ICFA, and therefore cannot survive if there are not sufficient facts to establish those claims. *Krause v. GE Capital Mortg. Serv., Inc.*, 314 Ill. App. 3d 376, 388 (1st Dist. 2000).

*Third*, Plaintiffs do not plead they notified Defendants of alleged overcharges, which bars the restitution claim. *Tudor v. Jewel Food Stores, Inc*., 288 Ill. App. 3d 207, 215 (1st Dist. 1997).

## V. <u>CONCLUSION</u>

Plaintiffs' misguided attempt to vilify the very business of property management companies based on an incorrect reading of the Condo Act fails. Therefore, the entire complaint should be dismissed.

Respectfully submitted,

							By: /s/ Arthur J. McColgan

Edward P. Gibbons (ARDC # 6201189)
Arthur J. McColgan (ARDC # 6201619)
Scott T. Stirling (ARDC #6307097)
Walker Wilcox Matousek LLP
One North Franklin Street, Suite 3200
Chicago, IL 60606
(312) 244-6700
egibbons@wwmlawyers.com
amccolgan@wwmlawyers.com
sstirling@wwmlawyers.com

Attorneys for Sudler and Company

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing **Brief in Support of Motion to Dismiss** was electronically filed using the CM/ECF system and will be sent electronically via ECF to all attorneys of record on December 19, 2017.

      By: /s/ Arthur J. McColgan