**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| KEITH HORIST, JOSHUA EYMAN and LORI EYMAN | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 17-cv-08113 |
| SUDLER AND COMPANY d/b/a SUDLER PROPERTY MANAGEMENT, HOMEWISE SERVICE CORP., INC., and NEXTLEVEL ASSOCIATION SOLUTIONS, INC., | ) ) ) ) ) ) | Honorable Robert W. Gettleman |
| Defendants. | ) ) | |

**PLAINTIFFS' COMBINED RESPONSE IN**
**OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION…………………………………………………………………..1

II.    FACTS……………………………………………………………………………...2

III.   PLEADING STANDARDS ON MOTION TO DISMISS……………………………3

IV.    ARGUMENT………………………………………………………………………3

    i.    There Exists an Implied Private Right of Action Under The Condo Act…………3

        A.  Homewise Seriously Misrepresents Condo Act's Plain Language………..3

        B.  Defendants, Who Are Agents of the Associations, Are Not Exempt From The Condo Act; Similarly, Electronic Transactions Are Not Exempted…..4

        C.  An Implied Cause of Action Exists Under the Condo Act……………..……8

            1.  Class of Persons Statute Designed to Protect………………………9

            2.  Consistent with Act's Underlying Purpose…………………………..9

            3.  Damages Complained of are Excessive Charges Statute Designed to Prevent………………………………………………………..….. 10

i

          4.   Necessary to Effectuate Purpose……………………………….…...10

     D.  Homewise Is Not a Mere Preferable Alternative, Nor is it Merely "Passing On" Permissible Charges to Sellers……………………………………...11

ii.  The Complaint Adequately Alleges a Claim for Unfair Practices Under the Illinois Consumer Fraud Act ("CFA")…………………………………………...13

     A.  Rule 9(b) Does Not Apply, and Plaintiffs' Claims Satisfy Rule 8(a)……..13

     B.  Plaintiffs allege an unfair practice…………………………………………...14

          1.   Defendants' Scheme Offends Public Policy……………………...15

          2.   Defendants' Conduct is Oppressive……………………………...16

          3.   Plaintiffs Allege a "Substantial Injury" and Damages…………...17

          4.   The Voluntary Payment Doctrine does not Bar Plaintiffs' Claims…………………………………………………………………18

              i.   Plaintiffs Were under Duress……………………………19

              ii.   Plaintiffs Lacked Knowledge of Facts…………………..20

iii. Plaintiffs Properly Plead Their Claim for Aiding and Abetting/Inducement of a Breach of Fiduciary Duty Claim…………………………………………………20

iv. Plaintiffs Properly Plead a Common Law Conspiracy……………………………23

v. Plaintiffs State an Unjust Enrichment Claim…………………………….………24

V.     CONCLUSION……………………………………………………………………...24

# TABLE OF AUTHORITIES

**Cases**

*3525 N. Reta, Inc. v. FDIC*,
   No. 10 C 3087, 2011 WL 62128 (N.D. Ill. Jan. 6, 2011)………………………………15

*Borsellino v. Goldman Sachs Group, Inc.*,
   477 F.3d 502 (7th Cir. 2007)……………………………………………………….. 21

*Boyd v. U. S. Bank, N.A.*,
   787 F. Supp. 2d 747 (N.D. Ill. 2011)…………………………………………..……15

*Cotton v. Med–Cor Health Information Solutions, Inc.*,
   472 S.E.2d 92 (Ga. App. Ct 1996)…………………………………………………5

*D'Attomo v. Baumbeck*,
   2015 IL App (2d) 140865…………………………………………………………11, 16

*Dubey v. Public Storage, Inc.*,
   395 Ill.App.3d 342 (1st Dist. 2009)……………………………………………14

*Ekl v. Knecht*,
   223 Ill. App. 3d 234 (2d Dist. 1991)……………………………………………..15

*Federal Trade Comm'n v. Sperry & Hutchinson Co.*,
   405 U.S. 233 (1972)……………………………………………………………..14-15

*Fednav Int'l Ltd. v. Continental Ins. Co.*,
   624 F.3d 834 (7th Cir. 2010)……………………………………………………...3

*Fisher v. Lexington Health Care*,
   188 Ill.2d 455 (1999)…………………………………………………………...9

*Ford v. Neese*,
   119 F.3d 560 (7th Cir. 1997)……………………………………………………...3

*Fritz v. Johnston*,
   209 Ill.2d 302 (2004)………………………………………………………………23

*Gardunio v. Town of Cicero*,
   674 F. Supp. 2d 976 (N.D. Ill. 2009)……………………………………………23

*Gateway Erectors v. Lutheran General Hospital*,
   102 Ill. App. 3d 300 (1981)……………………………………………………….7

*Geary v. Dominick's Finer Foods, Inc.*,
129 Ill.2d 389 (1989)……………………………………………………………………18

*Hefferman v. Bass*,
467 F.3d 596 (7th Cir. 2006)…………………………………………………… 22, 24

*Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*,
14 CV 10127, 2015 WL 2330197 (N.D. Ill. May 14, 2015)……………………………22

*HPI Health Care v. Mt. Vernon Hosp.*,
131 Ill.2d 145 (1989)……………………………………………………………… 24

*Lansing v. Carroll*,
71 F. Supp. 3d 765 (N.D. Ill. 2014)…………………………………………………… 21

*Merrill Tenant Council v. Department of Housing and Urban Development*,
638 F.2d 1086 (7th Cir. 1981)……………………………………………………………7

*Mikulecky v. Bart*,
355 Ill.App.3d 1006 (1st Dist. 2004)……………………………………….……………10

*Nava v. Sears, Roebuck and Co.*,
2013 IL App (1st) 122063 (1st Dist. 2013)……………………………………………18

*Nikolopulos v. Balourdos*,
245 Ill.App.3d 71 (1st Dist. 1993)…………………………………………… 6, 9, 10, 11

*Pemberton v. Williams*,
1877 WL 9790, 87 Ill. 15 (1877)……………………………………………………20

*People ex rel. Fahner v. Hedrich*,
108 Ill.App.3d 83 (1982)……………………………………………………….. 16

*People ex rel. Hartigan v. Stianos*,
131 Ill. App. 3d 575 (2d Dist. 1985)………………………………………………..17

*Peterson v. O'Neill*,
1930 WL 2964, 255 Ill.App. 400 (1st Dist. 1930)………………………………......20

*Pratt v. Smart Corporation*,
968 S.W.2d 868 (Tenn. App. Ct. 1997)………………………………………5, 6, 16, 18

*Ramirez v. Smart Corp.*,
371 Ill. App. 3d 797 (3d Dist. 2007)………………………………………4-6, 15, 18, 20

*Robinson v. Toyota Motor Credit, Corp*,
  201 Ill. 2d 403 (Ill. 2002)………………………………………………………… 14

*Royal Glen Condominium Ass'n v. S.T. Neswold & Associates, Inc*.,
  2014 IL App (2d) 131311……………………………………………………...11

*Sawyer Realty Group, Inc. v. Jarvis Corp.*,
  89 Ill.2d 379 (1982)…………………………………………………………………8

*Schlossberg v. E.L. Trendel & Assocs., Inc.*,
  63 Ill.App.3d 939 (1st Dist. 1978)……………………………………………19

*Siegel v. Shell Oil Co.*,
  612 F.3d 932 (7th Cir. 2010)………………………………………………...14

*Thomas D. Philipsborn Irr. Ins. Trust v. Avon Capital, LLC*,
  669 Fed. Appx. 550, 552 (7th Cir. 2017)…………………………………..7

*Triad Ass'n, Inc. v Chicago Housing Auth.*,
  892 F.2d 583 (7th Cir. 1989)…………………………………………………3

*Tudor v. Jewel Food Stores, Inc.,*
  288 Ill. App. 3d 207 (1st Dist. 1997)……………………………………24

*Wendorf v. Landers*,
  755 F. Supp. 2d 972 (N.D. Ill. 2010)………………………………………...13

*Wermers Floorcovering, Inc. v. Santanna Natural Gas Corp.*,
  342 Ill.App.3d 222 (2d Dist. 2003)……………………………………....19

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Services, Inc.*,
  536 F.3d 663 (7th Cir. 2008)……………………………………13, 22, 24

**Statutes and Other Authorities**

735 ILCS 5/8-2001………………………………………………………………….4

765 ILCS 605/2(z)………………………………………………………………...8

765 ILCS 605/18.4……………………………………………………… 10-11, 21

765 ILCS 605/18.7(g)………………………………………………………….4

765 ILCS 605/18.8(b)………………………………………………………….8

765 ILCS 605/22.1(c)………………………………………………………*passim*

815 ILCS 505/2…………………………………………………………………………………..14

2A C.J.S. Agency § 141 (2017)…………………………………………………………………5

Restatement (Third) of Agency (2006), §§3.15, 5.01-5.02, 7.01………………………………..7-8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEITH HORIST, JOSHUA EYMAN and LORI EYMAN | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 17-cv-08113 |
| SUDLER AND COMPANY d/b/a SUDLER PROPERTY MANAGEMENT, HOMEWISE SERVICE CORP., INC., and NEXTLEVEL ASSOCIATION SOLUTIONS, INC., | ) ) ) ) ) ) | Honorable Robert W. Gettleman |
| Defendants. | ) | |

## PLAINTIFFS' COMBINED RESPONSE IN
## OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS[1]

## INTRODUCTION

Defendants do not dispute that the Condo Act prohibits community associations from charging hundreds of dollars to Illinois homeowners for Disclosure Documents,[2] which are PDFs with little to no "direct, out-of-pocket" cost. Nevertheless, Defendants ask the Court to bless their scheme whereby Defendants – the agents who perform the community associations' fiduciary and statutory duty of providing Disclosure Documents – charge homeowners the unlawful fees. In other words, Defendants argue, because they are not the associations, but instead their agents, they can charge whatever they want. However, this argument, which unsurprisingly is supported by no precedent, has no validity; and accepting it would mean any statutorily-regulated entity could end

---

[1] Although Defendants Sudler and Company ("Sudler") and HomeWise Service Corp. and Nextlevel Association Solutions, Inc., (collectively "HomeWise") filed separate motions to dismiss (ECF # # 11 and 24-25), similarities in their arguments led Plaintiffs to file this combined response.

[2] The documents identified at Section 22.1 of the Condo Act (765 ILCS 605/22.1) are referred to as "Disclosure Documents."

run the law by simply hiring an agent to do for it what the law prohibits. For this reason and those below, Defendants' Motions to Dismiss must be denied.

## FACTS

When an Illinois homeowner sells a condominium or cooperative, as a standard condition of closing, the association must provide Disclosure Documents, such as the association's rules and declarations, for the seller to make available for inspection to the prospective buyer. Compl., ¶¶ 2, 27, 25. For copying and providing the Disclosure Documents, the Condo Act allows the associations to charge unit sellers only a "reasonable fee" limited to the association's "direct out-of-pocket cost". 765 ILCS 605/22.1(c) (referred to herein as the "Condo Act" or "Section 22.1").

In an effort to turn this process into a profit center, Defendants have caused the associations managed by Defendant Sudler to stop providing Disclosure Documents, effectively requiring Plaintiffs to utilize Defendant HomeWise. HomeWise, in turn, charges sellers hundreds of dollars – far more than the association's reasonable, direct, out of pocket cost of copying and providing – a large portion of which HomeWise then kicks-back to Sudler. Compl., ¶¶4-5, 9, 41-49. Because Disclosure Documents are not "copied" at all and instead come in electronic format, and internet fees involved are minimal, there are few if any actual "direct out-of-pocket costs" incurred by anyone, and yet, sellers still pay hundreds of dollars. Compl., ¶4.

While Sudler claims that it is merely providing professional association management services in exchange for an overall management fee,[3] that is not what Plaintiffs complain of. Sudler Br. at 1. What Plaintiffs complain of is that *in addition to* the management fee Sudler

---

[3] A "Community association manager" is defined in the Condo Act, 765 ILCS 605/18.7(b), as "an individual who administers for compensation the coordination of financial, administrative, maintenance, or other duties called for in the management contract, including individuals who are direct employees of a community association. A manager does not include support staff, such as bookkeepers, administrative assistants, secretaries, property inspectors, or customer service representatives."

charges to the associations, Sudler, in conspiracy and combination with Homewise, is *additionally* profiting off individual home sellers who have no choice (not "voluntarily elect," as Sudler claims, *see* Sudler Br. at 2) but to either submit to paying HomeWise's monopoly prices or risk defaulting on their sales contract and being unable to sell their home. Compl., ¶¶ 2, 25, 27, 53. Were it not for Defendants' unlawful scheme, Plaintiffs would have been able to obtain the Disclosure Documents from their associations and would have been charged only the amount Section 22.1 allows: a "reasonable fee covering the *direct out-of-pocket cost*" of providing and copying the Disclosure Documents (emphasis added). Compl., ¶¶7, 9, 41-49, 53, 61-66, 77-83.

## PLEADING STANDARDS ON MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) is only concerned with whether defendant is placed on Rule 8(a) notice of a plausible claim. In making this assessment, the Court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded factual allegations, and draw all reasonable inferences in favor of the non-moving party. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010). A motion to dismiss tests only the sufficiency of the complaint and is not a vehicle to try a case or weigh evidence. *Triad Ass'n, Inc. v Chicago Housing Auth*., 892 F.2d 583, 586 (7th Cir. 1989). If the court finds dismissal is warranted, it should allow the plaintiff to amend unless that would be futile. *Ford v. Neese*, 119 F.3d 560, 563 (7th Cir. 1997). Plaintiffs' Complaint cannot be dismissed under these standards.

## ARGUMENT

I. **There Exists an Implied Private Right of Action Under The Condo Act.**

A. **HomeWise Seriously Misrepresents The Condo Act's Plain Language.**

Defendant HomeWise starts its brief with a significant misstatement of the law. HW Br. at 1, 3. In arguing that the Condo Act "expressly forecloses any claim," HomeWise relies on a

purported quotation from 765 ILCS 605/18.7(g)(1), claiming it provides, in a bracketed phrase inserted by HomeWise: "Nothing in [*the Condo Act*] create[s] a cause of action by a unit owner . . . ." (Emphasis added.)

However, the actual text states: "Nothing in ***this amendatory Act of the 95th General Assembly*** shall create a cause of action by a unit owner . . .." (Emphasis added.)  Thus, §18.7(g) does not say what Defendants claim it says; only the *amendatory Act,*[4] which added provisions not at issue in this case, does not create a cause of action.  Moreover, the amendatory Act expressly provides it "shall not impair any right of action" under existing law.  *Id*. at §18.7(g)(2).  HomeWise's argument is misleading and, at best, remarkably wrong.  Tellingly, Sudler does *not* make this same misleading argument.

### B.     Defendants, Who Are Agents of the Associations, Are Not Exempt From The Condo Act; Similarly, Electronic Transactions Are Not Exempted.

Defendants argue that the Condo Act does not apply to them because: (i) they are not associations (HW Br. at 4-6; Sudler Br. at 3-4), (ii) the fee cap is triggered only when a seller makes a "written" request to their association (HW Br. at 5-6), and (iii) the Condo Act does not apply to an "electronic …web-based service."  (HW Br. at 5-6).  These arguments fail.

The fact that Defendants are not the associations is irrelevant.  In *Ramirez v. Smart Corp.,* 371 Ill. App. 3d 797, 800 (3d Dist. 2007), plaintiffs sued a hospital's agent, Smart Corp., which the hospital hired to supply copies of medical records.  The plaintiff alleged Smart charged excessive fees prohibited by the Hospital Records Act, 735 ILCS 5/8-2001.  The Illinois appellate court reversed a judgment in favor of the defendant, reasoning that while "[i]t has been generally accepted that hospitals can compel a patient to obtain their records by paying an outside copying

---

[4]     P.A. 095-0318 available at: *http://www.ilga.gov/legislation/publicacts/fulltext.asp?name=095-0318&GA=95&SessionId=51&DocTypeId=HB&DocNum=1071&GAID=9&Session=*

service … proper construction of the statute [governing hospitals] necessarily implies reasonableness [on the part of Smart, the agent,] in the billing of patients for the service." *Ramirez*, 371 Ill. App. 3d at 804. Smart, by accepting responsibility for the principal's obligation to supply copies, stepped into the hospital's shoes and also was prohibited from levying excessive charges.

In reaching its conclusion, the *Ramirez* court relied on *Pratt v. Smart Corporation*, 968 S.W.2d 868 (Tenn. App. Ct. 1997), in which Smart was also sued for excessive charges. Rejecting the argument that a similar statute applied "only" to hospitals and not their agents, the court held:

> [W]e disagree with Smart's contention that by its terms, the Act does not apply to independent copying services. It is true that the Act does not specifically mention such entities; nevertheless, it is clear in this case that Smart acted as the hospital's authorized agent, and, as such, could not perform acts which the hospital was forbidden by law to perform itself.

*Pratt*, 968 S.W.2d at 873; *see also Cotton v. Med–Cor Health Information Solutions, Inc.*, 472 S.E.2d 92 (Ga. App. Ct 1996) (similar hospital records fee-capping statute "would be completely defeated through a construction of the Act that would allow patients to be charged more than the reasonable copying and mailing costs if the providers hire others to perform the task of supplying the records"); 2A C.J.S. Agency § 141 (2017) ("[A]n agent cannot do what the principal cannot lawfully do itself.")[5]

Like Smart, Defendants are "covered" by the Condo Act, even though the Act "does not specifically mention" them, because, like Smart, they "acted as the [association's] agent[s], and, as such, could not perform acts which the [association] was forbidden by law to perform itself."

---

[5] *See also* 2A C.J.S. Agency § 141 annots. ("An agency generally may be created for the performance of any lawful act performable by the principal, including acts done under authority of statute, but not authority greater than that possessed by the principal. One cannot do through an agent that which one cannot do directly.") (internal citations omitted); *Surety Bail Bondsmen of Oklahoma, Inc. v. Insurance Com'r*, 243 P.3d 1177, 1185 (Ok. 2010) ("under the rules of statutory construction, we presume that the Legislature has not done a vain and useless act. It is nonsensical to construe [the statute] as placing limitation on the [principal] and then construe the same provision so as to let him avoid the limitation by appointing [another] as his agent.") (internal citations omitted).

*See Pratt* at 873. Unless Sudler is subject to the same statutory limitations as the community associations, its principals, the Condo Act is meaningless. *See Nikolopulos*, 245 Ill.App.3d at 77; *Ramirez*, 371 Ill. App. 3d at 804. As agent of the associations and co-conspirator/joint actor with HomeWise, Sudler is not merely an "outside company;" and, imputing the duties of community associations to their agents, HomeWise and Sudler, is consistent with the law of agency and the legislature's clear intent to cap charges to homeowners for Disclosure Documents.

As Sudler points out, "The cardinal rule of statutory construction is to 'ascertain and give effect to the true intent and meaning of the legislature.'" Sudler Br. at 3. Here, the intent of the legislature is to require associations to provide Disclosure Documents when requested, and that the documents be available at nominal cost: "The principal officer of the unit owner's association *or such other officer as is specifically designated* shall furnish the [Disclosure Documents] when requested to do so," 765 ILCS 605/22.1(b) (emphasis added); *id*. at 22.1(c) ("A reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information.") Here, Sudler contracted with the associations to provide Disclosure Documents, shutting down the statutory path of obtaining Disclosure Documents, appointing Sudler the agent "specifically designated" to furnish Disclosure Documents on behalf of the associations. In turn, Sudler subcontracted fulfilling that task to HomeWise, which levied excessive charges that were in large part kicked-back to Sudler. Thus, even if Sudler was not directly subject to the Condo Act, it is liable for causing and/or inducing the community associations – who are admittedly subject to the Act – to violate both the Act and their fiduciary duties to their selling homeowners.

Sudler's misplaced "active part" agency argument is a red herring. The "active part" line of cases only purport to resolve questions of whether an agent is liable for a *principal's breach of*

*contract*; it has not been applied to cases like this one, involving an agent's tort or statutory liability. *See Thomas D. Philipsborn Irr. Ins. Trust v. Avon Capital, LLC*, 669 Fed. Appx. 550, 552 (7th Cir. 2017) ("The Trust does not contend that Trudeau committed a tort against it; its claim is contractual in nature."); *Merrill Tenant Council v. Department of Housing and Urban Development*, 638 F.2d 1086, 1092 (7th Cir. 1981) ("plaintiffs sue in contract"); *Gateway Erectors v. Lutheran General Hospital*, 102 Ill. App. 3d 300, 303 (1981) ("We find no stated rationale for such a theory in contract").

Plaintiffs here are not suing Defendants for breach of contract, but rather for Defendants' breach of statutory duty and other torts. The *Avon Capital* court, citing the Restatement (Third) of Agency § 7.01 (2006), specifically noted that whatever the validity of the "active part" doctrine in a contract context, it does not apply in a tort setting. 669 Fed. Appx. at 552. The Restatement provides: "An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment." Restatement (Third) of Agency § 7.01.[6] Here, the Complaint clearly alleges *tortious* conduct by Defendants. Compl. ¶¶ 7-9, 25, 33, 43, 48, 49, 53-59, 61-65,77, 96, 101.

Defendants' next claim that Plaintiffs suit must be dismissed because Plaintiffs did not make a request for Disclosure Documents *to their associations* (Sudler Br. at 2). However, Plaintiffs provided their request to Defendants, who are the associations' agents, and this was the

---

[6] *See also* Restatement (Third) of Agency § 7.01 cmt. c ("Common-law tort law is not the sole basis upon which a person may be subject to nonconsensual liability. For example, a statute may declare conduct unlawful, impose a public-law penalty on the person whose conduct violates the statute, and expressly or impliedly impose civil liability in damages to the victim of the violation. … When an agent's conduct violates a constitution, statute, regulation, or ordinance, the agent is subject to liability although the agent acted at the principal's direction or to further the principal's interests, unless the imposition of liability is inconsistent with the constitution, statute, regulation, or ordinance.")

legal equivalent of a request to the associations. The Restatement (Third) of Agency (2006), § 5.01(3) states, "[a] notification given to or by an agent is effective as notification to or by the principal as stated in § 5.02." §5.02(1) provides: "A notification given by or to an agent is effective as notice to the principal if the agent has actual or apparent authority to receive the notification…" Thus, Plaintiffs' request to Defendants, the associations' agents, was a request to the association. Notably, nowhere do Defendants deny that Sudler is an agent "acting on behalf of the associations" with HomeWise its subagent. Compl., 6. This is hardly surprising given the associations contractually retained Sudler to fulfill the statutory obligation to provide Disclosure Documents, and Sudler in turn contractually retained HomeWise as sub-agent. Compl., ¶¶ 16-18.[7]

Defendants' argument that Plaintiffs did not make a "written" request also fails. Plaintiffs made a "written request" by typing on their computer keyboard while connected to the HomeWise Internet portal. Nothing in the statute says a written request must be made on paper. In fact, Homewise admits it need not be: "the Condo Act contemplates that Associations and unit owners may 'perform any obligation' or 'exercise any right' under any provision of the Act through 'acceptable technological means,' including 'electronic transmissions over the internet.'" HW Br. at 6, *citing* 765 ILCS §§ 605/2(z); 605/18.8(b).

### C.     An Implied Cause of Action Exists Under the Condo Act.

Illinois courts "have continually demonstrated a willingness to imply a private remedy, where there exists a clear need to effectuate the purpose of an act." *Sawyer Realty Group, Inc. v. Jarvis Corp.,* 89 Ill.2d 379, 389 (1982). "If there is no indication that the remedies available are only those the legislature expressed in the Act, then where it is consistent with the underlying

---

[7] *See,* Restatement, § 3.15 (a "subagent" is "a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal." "The relationship between a subagent and the appointing agent and between the subagent and the appointing agent's principal are relationships of agency[.]" *Ibid*.

purpose of the Act and necessary to achieve the aim of the legislation, a private right of action can be implied." *Id*. at 386. In implying a private right of action, Illinois courts look to whether: (1) the plaintiff is within the class of persons the statute is designed to protect, (2) implying the cause of action is consistent with the underlying purpose of the act, (3) the plaintiff's injury is one the statute was designed to prevent, and (4) implying a cause of action is necessary to effectuate the purpose of the act. *Nikolopulos v. Balourdos*, 245 Ill.App.3d 71, 77 (1st Dist. 1993). These factors support an implied right of action under the Condo Act.

1.    <u>Class of Persons Statute Designed to Protect:</u>  Since the Condo Act expressly caps the charge to "unit sellers" for Disclosure Documents, Plaintiffs are members of a class – "unit sellers" – the legislature expressly intended to benefit. Section 22.1 expressly places the onus of obtaining the Disclosure Documents from the association, for inspection by the prospective purchaser, on the seller. 765 ILCS 605/22.1(a) ("In the event of any resale of a condominium unit by a unit owner other than the developer ***such owner*** ***shall obtain*** from the Board of Managers ***and shall make available*** for inspection to the prospective purchaser, upon demand, the [Disclosure Documents].") (emphasis added). Here, the Complaint clearly alleges that Plaintiffs properly demanded the Disclosure Documents – not gratuitously, but because they were contractually bound and could not sell their condominiums without first providing them to the purchaser, a standard condition of closing. Compl., ¶¶ 24, 27-28, 32, 35-36.

2.    <u>Consistent with Act's Underlying Purpose:</u>  HomeWise admits, "in assessing whether a private right of action exists in 'legislative enactments, courts must read the statute as a whole, not in isolated provisions.'" HW Br. at 4, *quoting Fisher v. Lexington Health Care*, 188 Ill.2d 455, 460 (1999). Here, the Condo Act, 765 ILCS 605/1 *et seq*., read as a whole, is clearly

*inter alia* intended to protect the rights of owners within the associations.[8]  While one way the legislature decided to serve that purpose was to give prospective purchasers the right to inspect Disclosure Documents before buying into the association, the legislature also explicitly chose to further that policy and protect owners another way: by giving sellers the right to be charged only a minimal fee for Disclosure Documents.  Absent a right of action here, a seller could have no recourse, rendering a nullity the legislature's fee cap.  *Nikolopulos*, 245 Ill.App.3d at 77 (without implied cause of action, § 22.1 is "meaningless").[9]

   3. <u>Damages Complained of are Excessive Charges Statute Designed to Prevent</u>:  The damage complained of here – fees charged to the "unit seller" in excess of the association's direct, out-of-pocket cost of providing Disclosure Documents – is exactly what the statute forbids.

   4. <u>Necessary to Effectuate Purpose:</u>  Illinois public policy, expressed in the Condo Act, is that Disclosure Documents "be freely and inexpensively available in order to encourage and facilitate sales, [and] to encourage sellers to make full and timely disclosures to" prospective buyers.  *See* Compl., ¶ 51; *see also Mikulecky v. Bart*, 355 Ill.App.3d 1006, 1012 (1st Dist. 2004) ("The legislative mandate to sellers is clear in this case: disclosure of information in furtherance of the public policy of Illinois.")  To further that policy, the legislature mandated the cost charged to the "unit seller" be only *the association's reasonable, direct, out-of-pocket cost of providing and copying*.  765 ILCS 605/22.1(c).  Defendants' scheme impedes this necessary public policy.  Moreover, nothing in either Act suggests any restriction on remedies, and Illinois courts have

---

[8] Section 18.4 of the Condominium Property Act sets out the powers and duties of a condominium board of managers and provides that, "[i]n the performance of their duties, the officers and members of the board * * * shall exercise the care required of a fiduciary of the unit owners."  765 ILCS 605/18.4.

[9] Defendants argue Plaintiffs seek to "undermine" and "frustrate" associations' right to engage management companies and discourage third-party vendors like HomeWise from providing services to associations, increasing the risk of unreliable disclosures to prospective purchasers.  HW Br. at 5; Sudler at 6.  However, Defendants are speculating and do not explain how these conclusions necessarily follow.

implied similar causes of action under the Condo Act. *See, e.g.*, *Nikolopulos,* 245 Ill.App.3d at 77; *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 44 (finding implied right of action because "section 22.1 is silent as to any remedy for a violation of its provisions.")

Defendants' Reliance on *Royal Glen Condominium Ass'n v. S.T. Neswold & Associates, Inc.*, 2014 IL App (2d) 131311, is misplaced. There, a condominium board urged an implied cause of action against its *insurance broker* under § 12 for failure to procure adequate insurance. Finding that the Condo Act was not designed to regulate the insurance industry, the court held: "When these [insurance related] subsections are read with section 18.4(f), it is clear that the legislature intended that ***the board of managers has the duty*** to obtain adequate and appropriate insurance coverage as set forth in section 12," *not insurance brokers*. *Royal Glen*, 2014 IL App (2d) 131311 at ¶¶ 23-30 (emphasis added). In contrast here, as agent, Sudler stands in the place of the associations, including by undertaking the association's duties in providing Disclosure Documents. In short, *Royal Glen* has little if anything to say about the claims brought here against the *agents* of the associations, whose principals are unquestionably regulated by the Condo Act.

In sum, failure to imply a cause of action on these facts would frustrate the legislature's intent to make Disclosure Documents inexpensively available in furtherance of the public policy of disclosure.

### D. HomeWise Is Not a Mere Preferable Alternative, Nor is it Merely "Passing On" Permissible Charges to Sellers.

HomeWise argues it was merely a "preferable alternative," and Plaintiffs could have requested Disclosure Documents (and apparently also received them) directly from their associations. HW Br. at 6. But Defendants were not an "alternative" – they were the only game in town. Sudler was hired to provide their associations' Disclosure Documents, foreclosing the "direct" avenue for obtaining the documents from the associations; and it uniformly directed

owners to HomeWise, ensuring sellers would use HomeWise.  Compl., ¶¶ 7, 9, 18, 53.  Plaintiffs would not have received their Disclosure Documents had they made a futile request to their associations; they still would have been directed to Defendants, because that is what they were contracted to do.

Sudler next speculates that "[h]aving Plaintiffs pay the third-party vendor directly ensures that the condo seller pays no more than the cost that the condo association or its Board would have had to pay in order to obtain the Disclosure Documents from the vendor on the seller's behalf." Sudler Br at 7.  In other words, Sudler claims, *if* rather than charging the sellers Sudler had instead charged the associations, it *would have* charged hundreds of dollars just the same; and, since that price would have been the "cost" to the associations, then as a matter of law, that *would have* been the association's reasonable, direct, out-of-pocket copying costs.  However, Defendants did not charge the associations, who are in a position to pick and choose their property managers and let the free-market control pricing; they ***instead*** charged homeowner-sellers, who have no choice but to submit to Defendants' arbitrary pricing.  Therefore, it is conjecture to say that the money Plaintiffs paid to Homewise would not have exceeded what the association *would have been* charged, *if* that is how the transaction had been structured, and in any event there is no evidence that such charges would have constituted permissible direct, out-of-pocket and reasonable, as required by Section 22.1.

Although Sudler engages in a fact-based effort to dress up copying and provision of documents to make it look like "professional," sophisticated work warranting excessive fees, that is not what the Condo Act provides.  *See* 765 ILCS 605/22.1(c) ("A reasonable fee covering the ***direct out-of-pocket cost*** of providing such information and copying may be charged") (emphasis added).  Moreover, providing Disclosure Documents to sellers via an Internet portal is not difficult,

and there is no reason it cannot be done accurately for far less. The Disclosure Documents are standardized, mostly identical between sellers. Compl., ¶4. The reality here is that the excess money is simply profit to the Defendants.

In sum, while Sudler claims that enforcing Section 22.1 will frustrate the purpose of the Condo Act, in fact the opposite is true: allowing Defendants to charge whatever they want to make the largest profit will frustrate the Act. The legislature's purpose is undermined if the Act can be circumvented by Defendants' machinations.

## II.    **The Complaint Adequately Alleges a Claim For Unfair Practices Under the Illinois Consumer Fraud Act ("CFA").**

### A.    **Rule 9(b) Does Not Apply, and Plaintiffs' Claims Satisfy Rule 8(a).**

Defendants argue Rule 9(b) applies. HW Br. at 7; Sudler Br. at 9-10. But Plaintiffs' CFA claims are not predicated on fraud but on Defendants' unfair practices. *See* Compl., ¶¶ 79-82 (Defendants' practices "offend public policy, have a direct consumer nexus, affect consumers as a whole, and violate the basic rights of consumers"). HomeWise expressly acknowledges this, stating: "Plaintiffs do not allege [the Defendants] misrepresented or omitted any information relating to the purchase of Disclosure Documents." HW Br. at 8. The heightened pleading standards under Fed. R. Civ. Proc. 9 (b) do not apply to an unfairness claim. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)"); *Wendorf v. Landers*, 755 F. Supp. 2d 972, 980 (N.D. Ill. 2010) ("The "Seventh Circuit has expressly held that the heightened pleading requirement of Rule 9(b) does not apply to ICFA claims based on unfair practices"). [10]

---

[10]  Defendants argue Plaintiffs have not plead intent (HW Br. at 11), but "intent to induce reliance" is not relevant to unfairness claims. *Wendorf,* 755 F. Supp. 2d at 979. In any event, Plaintiffs specifically alleged Defendants' unlawful scheme for making money off condominium sellers was intentional -- it was in fact

### B.    Plaintiffs Allege an Unfair Practice.

The Illinois legislature gave sellers the right to be charged no more for Disclosure

Documents than the associations' reasonable, direct, out-of-pocket costs of copying and providing

them.  *See* 765 ILCS 605/22.1(c).  Defendants violated this Illinois public policy by overcharging

for Disclosure Documents and inducing or causing the associations to close the statutorily-

established channel for obtaining documents, so Defendants could replace it with an exclusive,

expensive, online platform which Defendants profit from at Plaintiffs' expense.

The CFA protects consumers from a broad range of unfair and deceptive business practices

like this and is "liberally construed to effectuate its purpose."  *See Robinson v. Toyota Motor*

*Credit, Corp,* 201 Ill. 2d 403, 417 (Ill. 2002).  Conduct can be "unfair" without being deceptive.

*Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir. 2010).

In determining conduct is unfair, courts consider "interpretations of the Federal Trade

Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act".

815 ILCS 505/2.  The factors for measuring unfairness under § 5(a) are whether: (1) the practice

offends public policy; (2) it is immoral, unethical, *oppressive*, or unscrupulous; and (3) it causes

substantial injury to consumers.  *Federal Trade Comm'n v. Sperry & Hutchinson Co.,* 405 U.S.

233, 244 n. 5 (1972).  Conduct need not satisfy all three prongs of the *Sperry* test to be deemed

"unfair."  *Dubey v. Public Storage, Inc.*, 395 Ill.App.3d 342, 354 (1ˢᵗ Dist. 2009).  "Rather, a

practice may be unfair because of the degree to which it meets one of the criteria or because to a

less extent it meets all three."  *Id*., *citing Robinson*, 201 Ill.2d 403, 418 (2002) ("all three of the

---

their very business model.  Compl., ¶¶ 9, 25, 33, 41-49, 53, 61-65, 77; *see also* Sudler Br. at 1 (calling the
acts complained of here "standard business").

criteria in *Sperry* do not need to be satisfied to support a finding of unfairness"). Here, Plaintiffs' Complaint alleges *all three Sperry* unfairness elements.[11]

(1)     **Defendants' Scheme Offends Public Policy.**  Courts are expansive in interpreting what offends public policy for CFA purposes.  A "practice offends public policy when it violates a standard of conduct established by statutes or the common law or otherwise falls within the penumbra of some established concept of unfairness."  *Ekl v. Knecht,* 223 Ill. App. 3d 234, 242 (2d Dist. 1991); s*ee also 3525 N. Reta, Inc. v. FDIC,* No. 10 C 3087, 2011 WL 62128, at *6 (N.D. Ill. Jan. 6, 2011*), rev'd. on other grounds and remanded*, *sub nom. Farnik v. FDIC*, 707 F 2d 717 (7th Cir. 2013) (a practice can offend public policy "if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation.") Evidencing Illinois courts' expansive approach, an unfairness claim may be predicated on "violations of … statutes or regulations that themselves do not allow for private enforcement." *Boyd v. U. S. Bank, N.A*., 787 F. Supp. 2d 747, 751 (N.D. Ill. 2011).  The "offends public policy" test casts a far wider net than the "amenable to suit for violating a statute" test Defendants advocate.

Defendants' scheme plainly offends public policy in at least two ways.  First, the Condo Act plainly shows the Illinois legislature's policy of protecting sellers from excessive charges for Disclosure Documents, in furtherance of the prospective purchaser's right to inspect the same. *See*, *e.g.,* Compl., ¶¶ 51-59, 77-84.  If these limits can be circumvented by simply delegating the statutory duty to an agent, those limitations are meaningless.  *See e.g., Ramirez,* 371 Ill. App. 3d

---

[11] Sudler makes a brief feint at arguing the CFA is limited to cases of fraud or deception.  But it no sooner makes that erroneous contention than it retreats, citing with approval the broad principles of unfairness under the CFA that Plaintiffs rely on.  Sudler Br. at 10.  Both Defendants also argue (HW Br. at 8, Sudler Br. at 11), that Plaintiffs only complain of high prices, which, Defendants say, does not alone support an unfairness claim.  But even if that broad-brush statement were true, and Plaintiffs do not concede it, Plaintiffs' Complaint can in no way be read as alleging only high prices.  It alleges prices that are higher than the reasonable direct out-of-pocket expense of copying and providing, and a panoply of other unfair, oppressive and sometimes undisclosed misconduct.

at 804; *Pratt*, 968 S.W.2d at 873. Second, Defendants have caused the associations, who have a statutory[12] and fiduciary duty to unit owners, *see D'Attomo*, 2015 IL App (2d) 140865 at ¶ 67 (sellers have a statutory duty to prospective purchasers to provide Disclosure Documents, whereas the associations have a fiduciary duty *to unit owners – <u>not</u> prospective purchasers* – to comply with "the strictures of the Act"), to stop supplying Disclosure Documents as a means of funneling sellers into the high-priced HomeWise system. It offends public policy for companies to induce and cause Condo associations to abandon their duty just so Homewise and Sudler can turn a profit.

**(2) Defendants' Conduct is Oppressive.** Conduct is oppressive when the consumer has little alternative but to submit. *People ex rel. Fahner v. Hedrich,* 108 Ill.App.3d 83, 90 (1982) (conduct oppressive where mobile home park prohibited residents from selling without paying large transfer fee; no reasonable alternative but to pay). Sellers whose associations are managed by Sudler have no reasonable alternative to HomeWise to obtain the needed closing documents; the Defendants have caused the associations to stop supplying them. Compl., ¶¶ 53, and, 7, 9, 25, 27, 33-35, 37. By shutting down the normal avenue for securing Disclosure Documents, Defendants have effectively provided HomeWise with a monopoly, forcing sellers to pay HomeWise's excessive price. *Id.*

And this happens when sellers are most in need of protection. Real estate transactions are usually the most momentous financial events in a person's life, and they typically have time deadlines to obtain Disclosure Documents or risk default or cancellation of the sale. Thus, sellers have no alternative but to pay. *Id.* Defendants' argument that Plaintiffs could have avoided Defendants' high prices is contrary to the facts in the Complaint. HW Br. at 10; Compl., ¶¶ 53, and, 7, 9, 25, 27, 33-35, 37, 81.

---

[12] *See* fn. 8, *supra*.

Sudler argues that because Plaintiffs went to the HomeWise website and ordered documents, which comprised what Sudler calls a "significant package," any damages that resulted are "on Plaintiffs." Sudler Br. at 11. Not only does this argument miss the point of Plaintiffs' Complaint – Plaintiffs did not have a choice about whether to use HomeWise or not – but it doesn't make any sense. It is akin to saying someone who buys a product – in this case some PDFs that cost essentially nothing to produce and supply – at a price artificially inflated by an illegal price fixing conspiracy cannot recover because she "knew what she was paying". As to the "significant package" argument, the documents are significant in that sellers need them to close on the sale of their home, yes, but, the costs of providing them are not, which is why the legislature limited the charges that could be assessed for them. In the final analysis, this is a variant on the voluntary payment argument, which is disposed of at II. B. (4), *infra*.

(3)     **Plaintiffs Allege a "Substantial Injury" and Damages**. Plaintiffs have alleged a substantial injury which imposed a financial burden on them and others. Compl., ¶¶ 5, 9, 25-27, 34-35, 45, 46, 54, 68, 83 & 89. Even small individual harms can be substantial if they are part of a practice that, in the aggregate, causes large losses to the public. *See People ex rel. Hartigan v. Stianos,* 131 Ill. App. 3d 575, 581 (2d Dist. 1985) (overcharges of a few cents across all of retailers' customers could be substantial, and practice was unfair under CFA).[13] Here, Plaintiffs paid hundreds of dollars for their Disclosure Documents, far in excess of what is allowed by law. Defendants' Notice of Removal stated that Plaintiffs' compensatory damages alone were $1,510,000. [Doc. #1 at ¶ 21]. Plaintiffs' excess payments were a direct, proximate and foreseeable

---

[13] *See also Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 780–81 (N.D. Ill. 2008); *Wilson v. Harris N.A.,* No. 06 C 5840, 2007 WL 2608521, at *8 (N.D. Ill. Sept. 4, 2007).

result of Defendants' unlawful agreement to shut down the statutory channel to obtain Disclosure Documents and charge exorbitant monopoly prices. *Id.*[14]

(4)    **The Voluntary Payment Doctrine does not Bar Plaintiffs' Claims.**  Defendants argue that Plaintiffs' CFA unfair practice claims are barred by the voluntary payment doctrine. HW Br. at 12; Sudler Br. at 12-13.  Defendants are incorrect for at least four reasons.  First, voluntary payment issues are generally deemed factual and unsuitable for resolution on a motion to dismiss. *Ramirez*, 371 Ill.App.3d at 802.

Second, the voluntary payment doctrine is not available against a CFA claim.  Illinois courts have held:

> [T]he [voluntary payment] doctrine cannot apply to impede causes of action based on statutorily defined public policy, [and] this court has held that it should not apply to claims brought under the [Consumer Fraud] Act. [Citation omitted.]  Accordingly the defendant cannot invoke the voluntary payment doctrine to defeat the plaintiff's claim here.

*Nava v. Sears, Roebuck and Co.*, 2013 IL App (1st) 122063, ¶24 (1st Dist. 2013).  In support, *Nava* cited *Ramirez*, 371 Ill.App.3d at 805 n. 2, where the court held:

> The intent and purpose of [the Consumer Fraud] Act lend additional support to our refusal to apply the voluntary payment doctrine to this case. The Consumer Fraud Act is a regulatory and remedial statute intended to give broad protection to consumers, borrowers, and business people against fraud, unfair methods of competition, and other unfair and deceptive business practices. (Citation omitted.)

The *Nava* court also cited *Pratt v. Smart*, 968 S.W.2d 868 (Tenn.App.1997), which held:

> [W]here public policy has been established by a legislative enactment, a transaction that is violative of that policy is subject to inquiry even though it may be fully consummated.  In other words, the State has an interest in transactions that involve violations of statutorily-defined public policy, and, generally speaking, in such situations, the voluntary payment rule will not be applicable. (Citation omitted.)

Third, the voluntary payment doctrine is inapplicable to payments made for necessities. *See Geary v. Dominick's Finer Foods, Inc.,* 129 Ill.2d 389, 393-408 (1989).  The sale of a home is

---

[14]  Defendants' argument that Plaintiffs do not allege what a reasonable charge would be is premature; Plaintiffs are entitled to discovery on what the associations' reasonable out of pocket expenses were, if any.

such a necessity. Virtually everyone who owns a home will someday need to sell it. Jobs come and go, financial circumstances change, families grow and shrink, people are transferred, and they die, leaving homes to heirs to sell. At one time or another, every home must be sold.

Fourth, the voluntary payment doctrine does not apply to payments made under duress, or to payments are not made with full knowledge of the facts. *Wermers Floorcovering, Inc. v. Santanna Natural Gas Corp.*, 342 Ill.App.3d 222, 224-225 (2d Dist. 2003).

### i. Plaintiffs Were Under Duress

Here, the Complaint plainly alleges Plaintiffs paid under duress:

> Because the Condo Act requires sellers to pay for the Disclosure Documents, and the associations delegate the document provision function to Defendant Sudler, which in turn uniformly requires all sellers of homes in associations that it manages to utilize HomeWise, and HomeWise will not provide the Disclosure Documents unless the seller pays what HomeWise requires, Plaintiffs and Class members, as sellers, have little alternative but to submit to the improper and unlawful excessive fees.

(Compl., ¶53; *see also* ¶¶7, 33). Plaintiffs were under duress because Plaintiffs had no other reasonably practical means to obtain the required Disclosure Documents (Compl., ¶ 33), and they could not sell their properties without the Disclosure Documents. The Condo Act requires them to make those documents available, and it is a standard condition of closing. Compl., ¶¶ 2, 27, 25.

Being forced to pay money or risk defaulting on a contract to sell real estate is duress that negates the voluntary payment defense. In *Schlossberg v. E.L. Trendel & Assocs., Inc.*, 63 Ill.App.3d 939 (1st Dist. 1978), for example, a buyer had in turn agreed to resell the property to a third party. After the buyer tendered the purchase price, the seller demanded an additional $30,000. *Id.* at 951. Because the buyer was already obligated to sell the property to the third party and would default if he could not obtain the deed, the buyer had little choice but to pay the additional funds and then sue for their recovery. The court allowed the buyer to press its claim of duress, stating the foregoing facts constituted 'sufficient factual allegations to warrant an

evidentiary hearing on the issue of business duress.' *Id.* at 954; *see also Pemberton v. Williams*, 1877 WL 9790, at *2, 87 Ill. 15 (1877) (duress question for jury when buyer paid nearly all the contract price for a parcel of land, had also contracted to resell the property, and original seller demanded as a condition of the delivery of the deed a sum larger than was set forth in the contract); *Peterson v. O'Neill*, 1930 WL 2964, at **1-2, 255 Ill. App. 400 (1st Dist. 1930) (same). Similarly, here, the Plaintiffs, under contract to sell their homes at the time payment was made, deserve a hearing on their claims of duress.[15]

### ii. Plaintiffs Lacked Knowledge of Facts

The voluntary payment doctrine is also inapplicable because Plaintiffs lacked full knowledge of the facts. Defendants complain Plaintiffs fail to allege any facts about which they lacked knowledge, or who withheld the facts. HW Br. at 12. But the Complaint clearly alleges Defendants, without informing Plaintiffs, conspired to charge, and in fact did charge and collect, more than the reasonable fee allowed by law. Plaintiffs also lacked knowledge of Defendants' scheme to cause associations to cease supplying closing documents in order to force them to use HomeWise and lacked knowledge of the real cost of copying and delivering the Disclosure Documents, i.e., what they should have been charged. Compl., ¶¶ 9, 27, 31, 37, 46, 50 & 76-77.

### III. Plaintiffs Properly Plead Their Claim for Aiding and Abetting/Inducement of a Breach of Fiduciary Duty Claim.

The elements of aiding and abetting breach of fiduciary duty are: "(1) that the defendant aided a party who performed a wrongful, injury-causing act; (2) that the defendant was

---

[15] Defendants complain that Plaintiffs do not allege that they protested payment of HomeWise's fee. HW Br. at 12; Sudler Br. at 2, 13. However, Plaintiffs do not need to allege protest. *Ramirez*, 371 Ill.App.3d at 802-803 ("[C]ourts have generally held that plaintiffs are allowed to use duress as an exception to the voluntary payment doctrine regardless of protest or actual denial of the product or services. Ramirez does not have to allege that she actually tried to obtain her records without paying the charge and that the hospital or Smart refused to provide them.")

aware of its role at the time it provided the assistance; and (3) that the defendant knowingly and substantially assisted the violation." *Lansing v. Carroll*, 71 F. Supp. 3d 765, 773 (N.D. Ill. 2014) (Shah, J.). Tortious inducement of a breach of fiduciary duty's elements are "defendant (1) colluded with a fiduciary in committing a breach; (2) knowingly participated in or induced the breach of duty; and (3) knowingly accepted the benefits resulting from that breach." *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 508 (7th Cir. 2007).

Count III provides ample details of Defendants' scheme to aid and abet and induce a fiduciary breach by the associations[16] consisting of Sudler inducing or causing associations to cease supplying Disclosure Documents and then allowing Defendants to overcharge sellers. Plaintiffs allege:

- Defendants jointly conceived and implemented their scheme to allow a joint high-priced profit center by forcing association members to utilize HomeWise with the purpose and intent of collecting fees that violate the law. Compl. at ¶¶ 9, 61-66.

- Sudler's Internet site directs all sellers to the HomeWise Internet site to obtain Disclosure Documents. Compl. at ¶ 18. In turn, HomeWise falsely advertises that the management company and the associations follow the law in providing Disclosure Documents with the "goal" of keeping "the fees as low as possible." Compl. at ¶ 9.

- Plaintiffs had no reasonably practical means to access the Disclosure Documents other than through HomeWise because Sudler "uniformly directs all sellers in associations that it manages to HomeWise." because Sudler and HomeWise agreed to share fees, with the majority being paid by HomeWise to Sudler. Compl. at ¶¶ 25, 33, 41-47, 55.

- That without the excessive fees collected by HomeWise and remitted to Sudler, from an economic perspective, Sudler would likely find it necessary to charge the associations more for its services. Compl. at ¶ 47.

- The Defendants all knew the charged amount was more than allowed by the law. Compl. at ¶¶ 8, 48-49, 61-64, 105. The excessive fees charged by HomeWise and "rebated" to Sudler is an "end run" of § restrictions on allowable fees that is contrary to law. Compl. at ¶ 52, 55, 63.

---

[16] Associations have fiduciary duties to their members as a matter of law. 765 ILCS 605/18.4(a); *Duffy v. Orlan Brook Condominium*, 2012 IL App (1st) 113577, ¶ 18 (1st Dist. 2012).

- Defendants acted jointly and in concert with each other and with Plaintiffs' and Class members' associations and with full knowledge of each other's role in charging fees in excess of those permitted by law. Compl. at ¶¶, 55, 61-66. Their business models were designed to disregard the law through an agreement to subvert the Condo Act and to ignore the rights of the parties to a real estate transaction. Compl. at ¶ 77.

- Defendants substantially assisted the associations by controlling, working with, encouraging, directing, and/or requiring association members to use HomeWise for the purchase of Disclosure Documents at excessive prices. The Defendants act on behalf of the associations as their agent or subagents (Compl. at ¶ 6-8), and Sudler assumed the obligation to provide Disclosure Documents and entered into an agreement with HomeWise to fulfill this duty. Compl. at ¶ 7.

In arguing Plaintiffs allege no facts, HomeWise both ignores the foregoing and overstates what is required. HW Br. at 13-14. A "plaintiff need not plead the precise details of the alleged relationship" in a complaint, that is, the exact nature of how Defendants and the associations work together, without the benefit of discovery. *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.,* 14 CV 10127, 2015 WL 2330197, at *3 (N.D. Ill. May 14, 2015) (Shah, J.). *See generally, Hefferman v. Bass*, 467 F.3d 596, 600 (7th Cir. 2006) (reversing dismissal of aiding and abetting claim on a motion to dismiss).

Sudler cites *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) for the proposition that Rule 9(b) applies to an inducement/aiding the breach of a fiduciary duty. (Sudler Br at 14). That case, however, specifically noted that it only applied a heightened standard because a "pattern of fraud and racketeering activity" was alleged. *Id*. As demonstrated above, where, as here, a claim is predicated upon a violation of public policy, it is reversible error to apply a heightened pleading standard. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (reversing district court for applying heightened pleading standard to a CFA claim sounding in an unfair practice)*; Hefferman v. Bass,* 467 F.3d 596, 600 (7th Cir. 2006) (reversing and noting that "the question is whether [plaintiff]

adequately alleged [defendant] aided and abetted [the] breach of his fiduciary duty, we look again to Rule 8" and find the allegations sufficient).

## IV.     **Plaintiffs Properly Plead a Common Law Conspiracy.**

Plaintiffs properly plead Defendants and the associations conspired and agreed that HomeWise would exclusively provide Disclosure Documents so that HomeWise could charge fees in excess of those stated in the Condo Act and Sudler could get the bulk of those fees. This is a classic common law civil conspiracy.

The elements of civil conspiracy are: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston,* 209 Ill.2d 302, 317 (2004); *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 988 (N.D. Ill. 2009) (finding complaint stated conspiracy based on allegation defendants, acting illegally, "agreed, through explicit or implicit means, to falsely and maliciously charge the Plaintiff"). Plaintiffs' Complaint has adequately alleged the underlying torts and a conspiracy to commit those torts, as follows:

- Defendants together implemented a plan to violate the law by transforming low-cost Disclosure Documents into a high-priced "profit center" by forcing Plaintiff to use HomeWise and no one else. (Compl. at ¶¶ 9, 18, 25, 31).

- Defendants and the associations knew their fees were excessive and the scheme was jointly implemented to make a profit in violation of the law. (Compl. at ¶¶ 48, 55), Defendants acted jointly and in concert and aided and abetted each other. (Compl. at ¶¶ 61-66). Defendants acting in concert or by agreement, or aided and abetted one another, to induce Plaintiffs' and Class members' associations to breach their fiduciary duties to Plaintiffs and other Class members by allowing, encouraging or agreeing that Plaintiffs and other Class members would be charged fees in excess of those permitted by law. (Compl. at ¶ 66).

- Defendants knowingly agreed with and between themselves and the associations, to permit, encourage, cause and engage in unfair and other acts in violation of the CFA; to permit, encourage, cause and engage in acts in violation of the Condo Act; and/or to induce and cause the associations to violate and breach fiduciary duties to their members. (Compl. at ¶ 101).

Sudler's argument that Rule 9(b) applies is not accurate for the same reasons discussed in the prior section. *Windy City Metal Fabricators*, 536 F.3d at 670; *Hefferman,* 467 F.3d at 600.

## V. <u>Plaintiffs State an Unjust Enrichment Claim</u>.

To allege unjust enrichment, a plaintiff need allege only "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care v. Mt. Vernon Hosp.,* 131 Ill.2d 145, 160 (1989). Plaintiffs allege, "Defendants retained fees charged … in excess of the amount allowed by Illinois law", that they "retained and continue to voluntarily and unjustly retain these benefits", and that this "violates fundamental principles of justice, equity, and good conscience because [Defendants used] unfair and unlawful acts and acts in violation of the public policy of the State of Illinois." (Compl., ¶¶ 105-107). As such, Plaintiffs plausibly allege an unjust enrichment claim.

As to Defendants' contention concerning the voluntary payment doctrine, Plaintiffs incorporate their prior argument on this point referenced above. *See*, *supra*, at II. B. (4).

Finally, Sudler cites *Tudor v. Jewel Food Stores, Inc.,* 288 Ill. App. 3d 207, 215 (1st Dist. 1997), for the proposition that pleading notice to the defendant of overcharges is a requirement for an unjust enrichment claim. Sudler Br at 15. This is not accurate. *Tudor*'s discussion on this point relates to a claim for restitution for a mistake. That is not the case here: the Complaint alleges repeatedly that Defendants *intended* their misconduct. Compl., ¶¶ 48-49, 62-63.

## CONCLUSION

Defendants' excessive charges for the required Disclosure Documents violate the spirit and letter of the Condo Act and have damaged Plaintiffs and thousands of other condominium sellers in Illinois. Under the expansively interpreted "unfairness" sections of the CFA and applying the

notice pleading standards of Rule 8(a), Plaintiffs' Complaint states valid claims, and should not be dismissed. If the Court does dismiss any claim, or portion thereof, Plaintiffs request leave to replead.

DATED: January 30, 2018     By: *Stephen Sotelo*

**Charles R. Watkins**
**Guin, Stokes & Evans, LLC**
321 South Plymouth Court
Suite 1250
Chicago, Il 60604
(312) 878-8391
Email: charlesw@gseattorneys.com

**David Fish**
**Kim Hilton**
**John Kunze**
**The Fish Law Firm, P.C.**
Fifth Avenue Station
200 E. 5th Avenue, Suite 123
Naperville IL 60563
(630) 355-7590
Email: dfish@fishlawfirm.com
admin@fishlawfirm.com

**John R. Wylie**
**BarrettWylie, LLC**
30 N. La Salle Street
Suite 3200
Chicago, IL 60602
(312) 269-0600
Email: johnwylie@barrettwylie.com

**Stephen Sotelo**
**Homer Law Firm, P.C.**
200 E 5th Ave #123
Naperville, IL 60563
(630) 428-3311
Email: ssotelo@homerlawoffices.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **Plaintiffs' Combined Response in Opposition to Defendants' Motions to Dismiss** was electronically filed using the CM/ECF system and will be sent electronically via ECF to all attorneys of record on January 30, 2018.

By: <u>/s/ Stephen Sotelo</u>